# IN THE UNITED STATES DISTRICT COURT
# NOTHERN DISTRICT OF OHIO

| | |
|---|---|
| MID-CONTINENT COAL AND COKE COMPANY<br>20600 Chagrin Blvd., Suite 850<br>Cleveland, Ohio 44122<br><br>    Plaintiff,<br><br>vs.<br><br>ATLANTIC CARBON GROUP PLC<br>100 Stockton No. 7 Road<br>P.O. Box 39<br>Hazleton, PA 18201<br><br>And<br><br>HAZLETON SHAFT CORPORATION<br>100 Stockton No. 7 Road<br>P.O. box 435<br>Hazleton, PA 18201<br><br>    Defendants. | CASE NO.:<br><br>JUDGE:<br><br>**COMPLAINT FOR BREACH OF CONTRACT** |

Plaintiff Mid-Continent Coal and Coke Company ("Mid-Continent") for its Complaint against Defendants Atlantic Carbon Group Plc ("Atlantic Carbon") and Hazleton Shaft Corporation ("Hazleton Shaft"), (collectively, "Defendants") alleges as follows:

## Parties

1. Mid-Continent is a Delaware corporation with its principal place of business at 20600 Chagrin Blvd., Suite 850, Cleveland, Ohio 44122. Mid-Continent is in the business of selling and marketing metallurgical coke, anthracite coal, and petroleum coke to a wide variety of metallurgical producers and industrial carbon users.

2. Atlantic Carbon is an United Kingdom corporation with its principal place of business in the United States at 100 Stockton No. 7 Road, PO Box 39, Hazleton, Pennsylvania 18201. Atlantic Carbon owns and operates several anthracite coal mines and processing plants in Pennsylvania and sells both processed and unprocessed coal (*i.e.*, run of the mine coal) to customers throughout the United States.

3. Hazleton Shaft is a Pennsylvania corporation, and a subsidiary of Atlantic Carbon, with its principal place of business 100 Stockton No. 7 Road, PO Box 435, Hazleton, Pennsylvania 18201. Hazleton Shaft operates the Jeansville and Hazleton Shaft anthracite coal mines for Atlantic Carbon and provides billing invoicing services on behalf of Atlantic Carbon.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds the sum of $75,000 and the parties are citizens of different or foreign states.

5. This Court has personal jurisdiction over this matter pursuant to Ohio's long arm statute Ohio Revised Code §§ 2307.382 by transacting business with Mid-Continent in Ohio, contracting to supply goods to Mid-Continent and billing Mid-Continent in Ohio for those goods, and the other contacts and conduct made by Defendants in and to Ohio during course of the events at issue as further described below.

6. Venue is proper in the Northern District of Ohio pursuant to 28 U.S.C. §1391 because a substantial part of the events giving rise to Mid-Continent's claim against the Defendants occurred here.

**Factual Background**

**Mid-Continent and Defendants Develop a Business Relationship and Enter Into Agreements Pursuant to Which Defendants Promise to Deliver Coal.**

7. In 2016, Atlantic Carbon (then known as Atlantic Coal Plc) acquired the Hazleton Shaft Corporation through which it runs its Hazleton Shaft and Jeansville mine operations. Mid-Continent and Defendants have had a business relationship with each other since that time. Atlantic Carbon also owns the Stockton and Wet Slope mines.

8. On June 16, 2016, officers of Atlantic Carbon met with officers of Mid-Continent in Cleveland, Ohio to discuss the delivery of coal to Mid-Continent. CEO and Chairman, Adam Wilson, and the then Vice President of Sales, Donald Davidson, attended the meeting on behalf of Defendants. Then CEO Donald J. Joyce, Jr., President David Herman, Territory Manager Jeff Helinski, and Vice President of Sales Chad Rhodes attended this meeting on behalf of Mid-Continent. Pursuant to its negotiations with Mid-Continent, Atlantic Carbon contracted to deliver over 25,000 tons of coal to Mid-Continent in 2016.

9. The following year, on or about February 16, 2017, Mr. Wilson and Mr. Davidson again visited Mid-Continent at its Cleveland office to discuss the purchase of coal from Atlantic Carbon by Mid-Continent for 2017. As a result of these meetings between Mid-Continent and Atlantic Carbon in Cleveland, Atlantic Carbon sold 2,859.35 tons of coal to Mid-Continent in 2017.

10. On November 9, 2017, Mr. Wilson and Karl Laubenstine, Sales Manager for Atlantic Carbon, again met with Mr. Joyce, Mr. Herman, and Mr. Helinski in Chicago, Illinois to discuss the potential purchase of 100,000 tons of coal from Atlantic Carbon by Mid-Continent for 2018. Mid-Continent wanted to negotiate the advance purchase of coal from Atlantic Carbon because Mid-Continent had a specific need for 100,000 tons of coal to meet 2018 commitments

it had already undertaken for its customers. During the negotiations for this 100,000 ton order, Mr. Helinski, specifically underscored the significance of the order to Mid-Continent's business, stating: "Making sure you can fulfill this commitment is critical to this agreement. We make commitments to our customers and can't expect anything less from Atlantic. If you have any concerns with meeting the 100,000 ton requirement, I would prefer you tell us what you can do so we can plan accordingly." (Exhibit 1).

11. On November 15, 2017, Atlantic Carbon Chairman Adam Wilson wrote to Mid-Continent about their meeting. Mr. Wilson acknowledged Mid-Continent's need for a "100,000 ton order through 2018" and stated, "I am keen to make a commitment for the tonnage as soon as possible." (Exhibit 2).

12. Following this email, Mr. Wilson and Mid-Continent's CEO Donald Joyce, Jr. spoke over the telephone and negotiated the price and specific tonnage requirements that Atlantic Carbon would deliver to Mid-Continent in 2018. Mr. Wilson subsequently confirmed this conversation in an email later that same day, stating "We (ACG) can offer a price of $105 per ton in the sizes as set out below, [sic] all in US tons." (Exhibit 3).

13. On November 17, 2017, David Herman, President of Mid-Continent, emailed two purchase orders to Mr. Wilson of Atlantic Carbon.

14. Mid-Continent Purchase Order C-18008 offered to purchase 80,000 Net Tons of Anthracite Coal from Atlantic Carbon at $105.00 per ton. The anthracite coal was to be delivered in four different sizes of varying tonnage. (Exhibit 4).

15. Mid-Continent Purchase Order C-18009 offered to purchase 20,000 Net Tons of Crushed Barley Anthracite Coal from Atlantic Carbon at $100.00 per ton. (Exhibit 5).

16. For both Purchase Order C-18008 and Purchase Order C-18009 (collectively, the "Purchase Orders"), delivery was to be made by Atlantic Carbon F.O.B from Hazleton, PA. Deliveries were to be made by Atlantic Carbon in equal amounts each month of 2018.

17. On November 17, 2017, Mr. Wilson accepted the terms of both Purchase Orders on behalf of Defendants, stating "we are delighted to accept [the purchase orders] and we look forward to becoming business partners over the next 12 months." (Exhibit 6).

18. In connection with the Purchase Orders, Mid-Continent was directed to mail correspondence to the Hazelton Shaft P.O. Box. Hazelton Shaft invoiced Mid-Continent relative to the Purchase Orders and worked with Atlantic Carbon to make deliveries under the Purchase Orders.

19. By accepting the terms of the Purchase Orders, Atlantic Carbon agreed to deliver approximately 100,000 tons for the 2018 calendar year at $105 per ton for various sizes of anthracite coal and $100 per ton for crushed barley anthracite coal. These facts are undisputed.

**Due To Severe Weather, The Parties Expressly Modify the Delivery Schedule.**

20. Severe weather throughout Ohio and Pennsylvania prevented Mid-Continent from taking regular deliveries of coal during January 2018. It is well known in the coal mining and processing industry that cold temperatures as well as rain can significantly limit coal from being shipped by rail – the only method for economically transporting the volume of coal purchased by Mid-Continent from the Hazleton Shaft facility. This is because coal that is loaded into rail cars during below freezing temperatures freezes and therefore becomes difficult to unload from rail cars. When loaded coal cars become frozen, unloading the cars is often delayed which in turn causes delays and increased expenses while waiting for the cars to thaw. Further, once loaded,

coal often sits in rail cars for weeks at a time while the train is assembled and moved. This process further increases the likelihood of loads of coal becoming frozen.

21. In response to the severe weather, Atlantic Carbon agreed in a February 6, 2018 to Mid-Continent: "We all understand that in the month of January we had experienced exceptionally severe weather in the northeast, worse in Ohio. Atlantic Carbon understands completely that Mid Continent Coal and Coke (frustrated) were unable to take a ratable amount of the 2018 PO (8,333 tons) due to the exceptional weather through no fault of their own." (Exhibit 7).

22. Around this same time, Mr. Wilson, Mr. Joyce, and Mr. Herman discussed via telephone the shipment and delivery schedule for the remainder of 2018 and the need to revise the monthly delivery amounts to meet the 100,000 ton order between March and the end of the year.

23. On February 15, 2018, Mr. Wilson again agreed with Mid-Continent that he "understood the weather in January was not ideal" and that Mid-Continent would take all "100,000 tons over 9 months." (Exhibit 8).

24. On February 28, 2018, Jeff Helinski, territory manager for Mid-Continent, met with Mr. Wilson and Mr. Laubenstine. At that meeting, Mr. Wilson agreed that Atlantic Carbon would produce and deliver all 100,000 tons to Mid-Continent in 2018. Mr. Wilson stated that Atlantic Carbon intended to have all 100,000 tons produced by October so that it could all be shipped by the end of 2018.

25. In that same meeting with Mr. Wilson and Mr. Laubenstine, Mr. Helinski of Mid-Continent confirmed the agreement between the parties, namely that Atlantic Carbon would deliver the 100,000-ton order starting at the end of March through December 2018. On March 7,

2018, Mr. Wilson emphatically confirmed this agreement in writing, stating that he was "confident we will be able to ship (pro rata) 10,000 a month so that we meet your PO. As soon as we can get the shipping schedule we will be make your product to order (no extra charge!)" (Exhibit 9).

26. These communications constitute an unequivocal and express modification of the Purchase Orders. Specifically, the parties agreed to change the delivery schedule from 8,333 tons a month in 2018 to 10,000 tons a month beginning at the end of March 2018. These facts are undisputed.

**Defendants Breach the Parties' Agreement By Failing to Deliver Coal as Agreed.**

27. Almost immediately after agreeing to the modified delivery schedule, Atlantic Carbon and Hazleton Shaft failed to honor their delivery obligations.

28. On March 13, 2018, Mid-Continent attempted to schedule the delivery of at least 6,000 tons of coal in various sizes for the week of March 26. Mr. Laubenstine emailed Mid-Continent and indicated that Atlantic Carbon would "look" at options for making that delivery.

29. On March 19, 2018, Mid-Continent learned from the railroad scheduled to ship the coal that only 1500 tons were available at the Hazleton mine operated by Hazleton Shaft. Mr. Helinski contacted Mr. Laubenstine to confirm "what you will have available for me to ship next week."

30. On April 6, 2018, Mr. Helinski requested an update on the "available tons for the next month." On April 9, 2018, Mr. Laubenstine provided an update on the expected coal production and deliveries that Defendants expected to be able to meet in April, May, and June 2018. The expected delivery schedule was as follows: 700 tons of stove coal; 3,200 tons of pea/buck coal; 3,200 tons of rice coal; and 1,300 tons of crushed coal. Mr. Laubenstine also

indicated that Chestnut coal would not be available until its second plant was "running consistently." (Exhibit 10).

31. On April 17, 2018, Mr. Laubenstine unilaterally revised this estimated delivery schedule downward when asked about scheduling shipments of 3,200 tons of pea/buck coal in April. In an email to Mr. Helinski, Mr. Laubenstine said "If that is what I mentioned that is not correct. This is what I am confident we can ship in the next two to three weeks, 3,200 tons of rice. 1,600 tons of Pea/Buck." (Exhibit 11).

32. As of mid-April 2018, in breach of the parties' agreement, Atlantic Carbon expected to only be able to deliver approximately 5,500 tons of the contracted for 10,000 tons per month through June 2018.

33. Mid-Continent advised Atlantic Carbon of its concerns regarding its failure to honor the 10,000 ton per month agreed-upon schedule. In an April 20, 2018 email, Mr. Helinski reminded Mr. Laubenstine: "I have promised customers coal based on what you tell me. You said 3200 tons of buck/pea in April. You only have 1500 tons. This has forced me To [sic] tell customers I don't have coal for them. Which in turn makes them call other producers or competitors looking for Coal to fill the gap because I can't supply it." (Exhibit 12).

34. On May 8, 2018, Mr. Wilson and Mr. Laubenstine of Atlantic Carbon and Mr. Herman and Mr. Helinski of Mid-Continent met to discuss these issues. Mid-Continent requested and received assurances that Defendants would be able to honor the Purchase Orders. Atlantic Carbon again agreed to the 10,000 ton per month delivery schedule. Mr. Wilson stated that production by the Defendants was going well and that he would be able to honor the 10,000 ton commitment, despite having not delivered 10,000 tons in either March or April 2018. Mr. Wilson was confident Defendants would deliver 100,000 tons by the end of 2018. Further, Mr. Wilson

00630037-1

8


agreed with Mr. Herman that if Defendants failed to deliver 100,000 tons in 2018, they would nonetheless continue to ship coal into 2019 at the 2018 prices.

35. Despite Defendants' promises, Defendants' delivery of coal continued to fall short in May and June 2018. On May 24, 2018, Mr. Helinski protested and advised Mr. Laubenstine that Atlantic Carbon had delivered "only about half of what you said you would have for May."

36. On May 31, 2018, Mr. Helinski reminded Atlantic Carbon that the parties had discussed the "need to ship 10,000 tons per month to keep pace" with the modified delivery schedule.

37. On June 7, 2018, Mr. Helinski visited the Hazleton Shaft mine facility. He met with Mr. Laubenstine and David McCarthy, CFO of Atlantic Carbon, to discuss the delivery shortfalls. Mr. Helinski again reminded them that the parties had agreed to a 10,000 tons per month schedule, which Defendants were failing to meet. Mr. Helinski advised them that Mid-Continent had scheduled rail cars for the Hazleton Shaft facility to meet this delivery schedule and was now having to hold back those cars. Mr. Helinski advised them that they would likely need to deliver 13,000 to 14,000 tons a month going forward to meet the 100,000 ton order.

38. On June 25, 2018, Mr. Helinski again asked for an update from Atlantic Carbon on its expected delivery volumes, so he could "give the railroad our expected projection for moving coal for the second half of the year. With May and June being light on shipments, I need to know what you project you will have available for us to ship per month."

39. On June 27, 2018, Mr. Helinski asked again for an estimate on "monthly tons going forward so I can plan accordingly." These facts are undisputed.

## Defendants Continue To Repeatedly Breach the Parties' Agreements By Failing To Honor Their 100,000 Ton Commitment.

40. On July 5, 2018, Mr. Wilson responded to Mr. Helinski's request for an update on the delivery schedule of coal for the second half of 2018. Mr. Wilson promised that he would schedule enough shipments "to meet any monthly balance and therefore our commitment to you by year end." However, Mr. Wilson, in the same email attempted to go back on ACG's commitment, as expressly modified by the parties, to deliver 10,000 tons per month, saying "We should be producing about 2,000 tons a day, so I am still confident we will meet our commitment to you on a pro rata month basis (minus the disruption of the 24,000 tons in Jan through April due to severe weather across NE US) until the end of [sic] 2017." (Exhibit 13). At no point in time did Mid-Continent agree to take anything less than 100,000 tons from Atlantic Carbon.

41. On August 28, 2018, Mr. Herman and Mr. Helinski visited the Atlantic Carbon/Hazleton Shaft facility in Hazleton, Pennsylvania. During that visit, Mid-Continent learned that Defendants had approximately 2,500 tons of buck/pea coal on site that appeared to be being readied for shipment to another customer. This was despite Defendants having told Mid-Continent only a week prior that they had no buck/pea to ship.

42. Around the same time, Mid-Continent also learned that Defendants were shipping coal for export to others while mysteriously claiming they could not meet obligations to Mid-Continent. Upon information and belief, Defendants were also selling coal to other coal producers instead of honoring their contractual obligations to deliver coal to Mid-Continent.

43. On September 17, 2018, Mid-Continent requested an update on how much coal would be shipped during the remainder of 2018. As Mr. Helinski noted, "We are running out of shipping days this year and logistics are becoming more difficult. Advanced planning is extremely important and I am being forced to replace your coal with other sources." (Exhibit 14).

44. In a telephone call on September 21, 2018, between Mr. Wilson and Mr. Herman, Mr. Wilson informed Mid-Continent that the Defendants would not honor their 100,000 ton obligation under the Purchase Orders in 2018 and would not continue to deliver coal into 2019 under the 2018 agreed to prices.

45. On September 24, 2018, Atlantic Carbon advised Mid-Continent that during the remainder of 2018, it would at best deliver 15,000 tons of coal and at worst 5,000 tons. (Exhibit 15). To that date, in breach of the parties' agreement, Defendants had delivered only 31,852.72 tons of coal. Ultimately, Defendants only delivered another 3,897.49 tons of coal to Mid-Continent in 2018, resulting in a total shortfall of approximately 64,249.79 out of the 100,000 required by the Purchase Orders. These facts are undisputed.

## **Defendants' Specific Breaches of the Purchase Orders**

46. Mid-Continent through the Purchase Orders contracted with Defendants to purchase 100,000 tons of coal from Defendants in 2018 at $105.00 per ton of anthracite coal (*80,000 tons) and $100.00 per ton of crushed barley anthracite coal (20,000 tons). The parties originally agreed for the coal to be delivered in ratable amounts of 8,333 tons each month, but the parties expressly modified the delivery schedule in March 2018 by agreeing to a modified delivery schedule of 10,000 tons each month for the remainder of 2018. Defendants' subsequent and specific breaches of the Purchase Orders are as follows:

47. In January 2018, Defendants delivered 71.89 tons of coal to Mid-Continent.

48. In February 2018, Defendants delivered 615.61 tons of coal to Mid-Continent.

49. In March 2018, Defendants delivered 2,792.96 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 10,000 tons.

50. In April 2018, Defendants delivered 5,501.78 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 10,000 tons.

51. In May 2018, Defendants delivered 7,913.31 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 10,000 tons.

52. In June 2018, Defendants delivered 5,155.85 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 10,000 tons.

53. In July 2018, Defendants delivered 4,463.40 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 10,000 tons.

54. In August 2018, Defendants delivered 4,001.29 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 10,000 tons.

55. In September 2018, Defendants delivered 1,500.44 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 10,000 tons.

56. In October 2018, Defendants delivered 1,141.76 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 10,000 tons.

57. In November 2018, Defendants delivered 1,628.83 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 10,000 tons.

58. In December 2018, Defendants delivered 963.09 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 10,000 tons.

59. In 2018, Defendants delivered just over 35,750 tons of coal to Mid-Continent and breached the Purchase Orders as amended by failing to deliver the contracted for 100,000 tons.

60. All invoices for the coal shipped by Defendants were issued from both Atlantic Carbon and Hazleton Shaft.

61. All payments made by Mid-Continent for the coal delivered to it were made via ACH transfer from Mid-Continent's bank account in Cleveland, Ohio to Atlantic Carbon through Hazleton Shaft. These facts are undisputed.

**In Response to the Rising Price of Coal, Defendants Put Profit Over Honoring Their Contractual Commitments to Mid-Continent.**

62. Throughout 2018, Defendants complained of various production delays and disruptions, which they claimed prevented them from meeting their obligations to Mid-Continent. For example, Mr. Wilson, in an October 16, 2018 email, claimed that Defendants could not meet the 100,000 ton order because of "production issues beyond our control."

63. Mysteriously, however, at the same time Defendants were telling Mid-Continent that they were unable to produce enough coal to fulfill its order, Atlantic Carbon was touting its increased production capacity and capabilities.

64. For example, on July 19, 2018, Defendants began production at the Spring Mountain Wet Slope Mine. (Exhibit 16).

65. In addition, in its 2018 mid-year report, Atlantic Carbon reported that its clean coal production had <u>increased</u> in 2018 from the first half of 2017 by over 40,000 tons. In fact, Atlantic Carbon proclaimed that its "Clean coal production and sales (see Table below) again reached record levels showing significant increases on H1 2017." Atlantic Carbon further stated, "The return to profit, positive production performance and sales figures, together with a healthy

order book and strengthening sales prices provides us with good grounds for optimism for the remainder of the year." (Exhibit 17).

66. Furthermore, throughout the second half of 2018, as Defendants failed to honor their commitments to Mid-Continent, the market price of coal was increasing above the contracted-for-price in the Purchase Orders. To that end, in October 2018 in its public investment summaries, Atlantic Carbon proudly announced its ability to "increase production into an improving price environment."

67. Taking advantage of the "improving price environment," on November 15, 2018, Atlantic Carbon shipped 30,800 tons of coal to Antwerp, Belgium for export to European customers, despite falling miserably short of meeting obligations to Mid-Continent. (Exhibit 18).

68. These circumstances and Defendants' own statements demonstrate that they were producing and shipping more coal than they had in previous years in response to the higher demand and price of coal. Faced with rising prices, Defendants had a choice: they could honor their contractual commitment to Mid-Continent and deliver the 100,000 ton order at the contracted-for $105/$100 per ton price, or they could ship to other customers at higher prices and make more money. Defendants chose those higher prices over honoring their contractual commitments to Mid-Continent and forced Mid-Continent to cover the difference.

**Mid-Continent Incurred Significant Damages as a Result of Defendants' Breach.**

69. Because of Defendants' repeated and significant failures to perform, Mid-Continent was forced to purchase approximately 64,250 tons of coal from other suppliers at a higher cost to cover Mid-Continent's commitments to its customers, as follows:

00630037-1

14

(a) Mid-Continent purchased approximately 25,000 tons of coal from Reading Coal at a premium of $12.23 per ton over its contracted for price with Defendants forcing Mid-Continent to incur **$330,750.00 in extra costs**.

(b) Mid-Continent purchased approximately 35,992 tons of coal from Antex Intertrade LTD at a premium of $150.09 per ton over its contracted for price with Defendants forcing Mid-Continent to incur **$543,122.90 in extra costs**.

(c) Mid-Continent purchased approximately 3,258 tons of coal from Antex Intertrade LTD at a premium of $8.53 per ton over its contracted for price with Defendants forcing Mid-Continent to incur **$27,787.67 in extra costs**.

70. In total, Mid-Continent was damaged as a direct and proximate result of Defendant's breach in a monetary amount to be proven at trial, but which is at least $901,660.57 in extra costs Mid-Continent was forced to incur to cover the shortfall directly and proximately caused by Defendants' failure to deliver the contracted for 100,000 tons.

## COUNT ONE
### (Against Both Defendants)

71. Mid-Continent incorporates by references paragraphs 1 through 70 as if previously rewritten herein.

72. The Purchase Orders, as expressly modified by the parties, constitute valid and binding contracts between Plaintiff and Defendants.

73. Mid-Continent substantially performed its obligations under the Purchase Orders, as modified.

74. Defendants Atlantic Carbon and Hazleton Shaft at all times acted together and in concert with each other as it relates to their obligations pursuant to the Purchase Orders, as modified.

75. Defendants breached the Purchase Orders, as modified, by failing to deliver the amount of coal agreed upon by the Parties.

76. Defendants breached the Purchase Orders, as modified, by breaching their implied duty of good faith and fair dealing.

77. As a result of Defendants' breach, Mid-Continent has been damaged in an amount exceeding $900,000.00, to be proven at trial.

## **PRAYER FOR RELIEF**

Plaintiff Mid-Continent Coal and Coke Company respectfully requests that this Court enter judgment in its favor and against Defendants Atlantic Carbon Group Plc and Hazleton Shaft Corporation for the breach of contract claim asserted in this Complaint. Mid-Continent further requests that this Court:

A. Award Mid-Continent all its compensatory damages in an amount exceeding $900,000.00, to be proven at trial, resulting from Defendants' breach of the Purchase Orders;

B. Award Mid-Continent pre- and post-judgment interest, costs, and all other relief, at law or equity, that this Court deems appropriate.

>
> Respectfully submitted,
>
> /s/ *Kelley J. Barnett*
> Kelley J. Barnett (0071585)
> *kbarnett@frantward.com*
> Christopher C. Koehler (0059384)
> *ckoehler@frantzward.com*
> John F. Kostelnik (0014919)
> *jkostelnik@frantzward.com*
> Bradley D. Reed (0089711)
> *breed@frantzward.com*
> **FRANTZ WARD LLP**
> 200 Public Square, Suite 3000
> Cleveland, OH  44114
> Telephone: (216) 515-1660
> Facsimile: (216) 515-1650
>
> *Attorneys for Plaintiff Mid-Continent Coal and Coke Company*